· [Civ. No. 910. Third Appellate District.—February 1, 1912.]

# ISAAC OSTROM, Respondent, v. L. P. WOODBURY, Appellant.

ACTION ON NOTES—EVIDENCE—SPECIAL DEFENSE—CONDITIONS INDORSED —IMMATERIAL VARIANCE—DEFENDANT NOT MISLED.—Where two notes sued upon were on their face unconditional promises of the defendant to pay the principal sum, six months after date with interest, and their execution and delivery were not denied, but defendant had pleaded as a defense that each of them "was a conditional note, with certain conditions indorsed on the back thereof, which conditions have not been complied with," and the face of such note was introduced in evidence, the defendant cannot insist that there was a material variance on plaintiff's part in not offering in evidence the indorsements, since the defendant was not misled thereby to his prejudice, in maintaining his defense.

ID.—EFFECT OF SPECIAL DEFENSE—AIDER OF COMPLAINT.—The effect of the pleading of the special defenses to each of such notes was to aid the complaint in those particulars in which it is claimed that the complaint was defective in not pleading the notes in full, and to supply the omissions objected to.

ID.—INDORSEMENTS OF CONDITIONS OF PURCHASE OF MINING STOCK—PROOF OF NONACCEPTANCE—SUPPORT OF FINDING OF SURPLUSAGE.—Where the indorsements on each of the two notes signed by the defendant were to the effect that, "this note is given to protect" the payee named "from loss on account of the purchase of 1,000 shares of Red Star Gold Mining Co.'s Stock," and the payee "has the option during the life of this note of surrendering this note and keeping the 1,000 shares of stock or surrendering the stock and receiving payment on the note," it is held that a finding that such indorsements were "surplusage" is sustained by proof that the payee did not purchase or accept the shares of stock mentioned in payment of either of the notes.

ID.—LEGAL EFFECT OF INDORSEMENTS—OFFER OR OPTION TO ACCEPT SHARES IN PAYMENT IN LIEU OF COIN—EFFECT OF NOTES NOT CHANGED.—Viewing the indorsements as having been assented to by the payees, the same can only be considered as constituting in legal effect a mere offer or option tendered by the maker to the payees to accept the number of shares of mining stock mentioned therein in payment of the notes in lieu of their payment in gold coin as called for by the notes. The writing indorsed could no more affect or change the nature of the face of the notes than if it

had been committed to different pieces of paper unconnected with the notes.

ID.—ELECTION OF PAYEE TO ENFORCE NOTES—REJECTION OF OPTION—NUGATORY EFFECT UPON INDORSEMENTS.—The election of the payees to enforce payment of the notes according to the face thereof would, without regard to the position of the writing, amount to a rejection of the option, and if the note and indorsements are taken together, upon the refusal of the payees to take the stock, the notes would immediately become unconditional promises according to their tenor, and the written indorsements became nugatory and of no effect as soon as the action upon the notes was commenced.

ID.—ABSENCE OF CONDITION PRECEDENT TO ACTION ON NOTES.—Where the undisputed testimony shows that the payees had never received any shares of stock in the mining corporation, it appears that they had nothing to surrender as a condition precedent to their action upon the notes, which action of itself operated to surrender the bare right of option to take or acquire the stock.

APPEAL from an order of the Superior Court of Sierra County denying a new trial. Stanley A. Smith, Judge.

The facts are stated in the opinion of the court.

Wehe & Redding, for Appellant.

James F. Hunt, and Nilon & Arbogast, for Respondent.

HART, J.—The complaint in this action is in three counts: 1. For the sum of $267, alleged to have been loaned by plaintiff to the defendant; 2. On a promissory note for the sum of $500 and interest, said note having been, it is alleged, executed in favor of and delivered to plaintiff by the defendant; and 3. On a promissory note executed by defendant in the sum of $500 in favor of one Richard Lindvall, the latter having assigned said note to the plaintiff.

The court found in favor of plaintiff on all the counts of the complaint, and thereupon caused to be entered in favor of plaintiff judgment for the sum of $1,459.41.

This appeal is by the defendant from the order denying him a new trial.

The general contention of the appellant is that the evidence does not support the decision of the court, the action

having been tried by the court without a jury, and that errors were committed in the admission of certain evidence.

The note, as pleaded in the second count of the complaint, reads as follows:

"Alleghany, Nov. 9th, 1908.

"Six months after date I promise to pay to the order of Isaac Ostrom, Five Hundred Dollars for value received, with interest at 7 per cent per annum, from date until paid, both principal and interest payable only in United States gold coin, and in case suit is instituted to collect this note or any portion thereof — promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit.                                    L. P. WOODBURY."

The note executed by Woodbury to Lindvall and as pleaded in the third count of the complaint is in words and figures precisely the same as those of the foregoing note, the only difference being in the name of the payee.

The answer traverses the averments of the first count of the complaint and, besides, sets up a special defense thereto which need not be further noticed, since the sole complaint of appellant against the order is involved in the attack upon the rulings of the court with respect to the second and third counts.

As to the last-mentioned counts, the answer denies that the defendant executed the notes as therein declared upon and described, but alleges that each of the notes that he did execute and deliver to the respective payees named in said notes "was a conditional note, with certain conditions indorsed on the back thereof, which conditions have not been complied with," and that he is not indebted to the plaintiff on account of said notes "in any sum of money whatever, or at all."

The real point of objection to the soundness of the order denying the defendant a new trial lies in the contention, (1) that there is a material variance between the allegations of the second and third counts of the complaint and the proof offered and received in their support, and (2) that, in allowing said evidence, the court committed prejudicial error.

The note made in favor of and delivered to the plaintiff by the defendant contained, upon the back thereof, the follow-

ing: "This note is given to protect Isaac Ostrom from loss on account of the purchase of 1000 shares of Red Star Gold Mining Co.'s stock. Said Ostrom has the option during the life of this note of surrendering this note and keeping the 1000 shares of stock or surrendering the stock and receiving payment on the note." This indorsement is signed by the maker of the note, defendant herein.

The note from Woodbury to Lindvall, and which is the subject of the third count of the complaint, bears upon its back, *mutatis mutandis,* a similar indorsement.

At the trial, the defendant objected to the admission of the notes in evidence on the ground that the notes offered as evidence were not the notes pleaded. Thereupon the plaintiff offered the face of the notes in evidence, to which defendant objected on the first-mentioned ground and on the additional ground that "counsel could not offer half of a note," and "that plaintiff must recover on the notes pleaded and not upon" other contracts. The court reserved its rulings on all these objections until a later period in the progress of the trial. At the conclusion of plaintiff's testimony, the court made an order overruling the objections to the evidence referred to, and counsel for defendant thereupon moved to strike said testimony from the record upon the grounds upon which the original objections thereto were urged. The court denied this motion and the defendant thereupon rested his case without offering proof in support of the allegations of his answer or upon the merits of his special defenses to the second and third counts of the complaint.

It is clearly manifest, from the averments of the answer and the course pursued by the defendant in the trial, that the variance complained of did not actually mislead him to his prejudice in maintaining his defense upon the merits, had he chosen to press the special defenses set up in his answer upon their merits, and it is the rule in this state that where the variance is not so misleading as to prejudice a party in maintaining his action or defense upon the merits, such variance is immaterial. (Code Civ. Proc., sec. 469; 31 Cyc., p. 703, and California cases cited in the footnote.)

The defendant does not deny, but admits, the execution and delivery of certain notes to the plaintiff and his assignor, and merely denies that the notes pleaded in the com-

18 Cal. App.—10

plaint are the notes so executed and delivered. He is, therefore, to be deemed to have known of any defense, if any, which he might have interposed against. recovery upon the counts setting up the notes. Indeed, the averments of his answer, wherein he sets up an alleged special defense against the validity of the claims of the second and third counts of the complaint, are plainly affirmative of the possession of actual knowledge by him of the defense that he could, and, in fact, did by his pleading, interpose to a recovery upon the notes as pleaded in the complaint. The answer, replying to the second and third counts of the complaint, alleges, as we have seen, that the notes made by the defendant in favor of Ostrom and Lindvall were ''conditional notes, with certain conditions indorsed on the backs thereof, which conditions have not been complied with.'' The notes which were offered and received in evidence in support of plaintiff's case, bore upon their backs the indorsements referred to by the answer. How could the defendant have been misled to his prejudice in maintaining his defense, when he set up what appears to be, and evidently is, the only defense that he could plead against recovery upon the notes?

Obviously, there does not and cannot exist any ground for a diversity of opinion as to the elementary rule that the *probata* and *allegata* must correspond. And if the defendant had rested upon a mere denial of the execution of the pleaded notes, and the writing on the back of the notes actually made and delivered by him might be held to be material or as vitally affecting the nature of the instruments, he would now be in a position to claim a want of correspondence between the averments of plaintiff's complaint and the proof. But, in the place of such a course, he, as we have shown, preferred to set forth in his answer the nature of the contracts to which he really bound himself, and in so doing betrayed evidence of the only defense, if defense at all, which it was within his power to advance against the second and third counts of the complaint.

We are unable to perceive an analogy, as appellant insists exists, between the case at bar and the cases of *Owen* v. *Meade*, 104 Cal. 179, [37 Pac. 923], *Bailey* v. *Brown*, 4 Cal. App. 515, [88 Pac. 518], and *Edinger* v. *Sigwart*, 13 Cal. App. 667, [110 Pac. 521]. In none of those cases does the

question arise whether the answer to the complaint is such as to disclose that the defendant was or was not misled by the variance between the complaint and the evidence. In each of those cases it is merely held that the evidence failed to establish the contract as pleaded, and, of course, a judgment obtained under such circumstances would be without a prop to support it.

Moreover, the effect of the pleading of the special defenses in the answer was to aid the complaint in those particulars in which it is claimed that plaintiff's pleading is defective and to supply the omissions objected to. (*Herman* v. *Hecht*, 116 Cal. 553, 559, [48 Pac. 611]; *Herd* v. *Tuohy*, 133 Cal. 55, 60, [65 Pac. 139]; *Lyles* v. *Perrin*, 134 Cal. 417, [66 Pac. 472]; *Daggett* v. *Gray*, 110 Cal. 169, [42 Pac. 568]; Pomeroy's Remedies and Remedial Rights, sec. 579). The answer is verified, and, as seen, the defendant therein, in effect, alleges that the notes as pleaded in the complaint were not the notes executed by him, in that it did not appear from the complaint that they bore upon their backs the written matter referred to. The averments of the answer with regard to the notes were sufficient to and did tender a clear issue upon the proposition whether the notes upon which the plaintiff declared were the notes made and delivered by the defendant.

Manifestly, under our view of the issues which were tendered by the pleadings, the rulings of the court admitting the notes in evidence were perfectly proper. But it is further objected that the court erred in permitting plaintiff and his assignor to explain the writing on the backs of the notes. If there was error in allowing some of the testimony concerning said writing, we think it was without prejudice.

The court found that the written matter on the backs of the notes was "surplusage." The finding was based upon the testimony of Ostrom and Lindvall, payees of the notes, to the following effect: That when the defendant, having previously secured a promise by Ostrom and Lindvall for a loan of $500 from each, delivered the notes to the payees, he explained that he desired them to have some of the stock in the Red Star Gold Mining Company, and that his purpose in putting the writing on the backs of said notes was merely to thus guarantee the right to Ostrom and Lindvall to pur-

chase and acquire 1,000 shares of stock each in the corporation in the event that said mining corporation "struck it rich"; that the payees never agreed to buy stock in said corporation, never intended to do so, and never authorized the defendant to put the writing referred to on the backs of the notes; that they merely made a straight loan of the money evidenced by the notes and expected payment of the same strictly according to the terms of the face thereof. It may be conceded that some of this testimony was incompetent, still it was without prejudice, for we think the court would have been justified in making the finding referred to upon the instruments themselves and proof that the payees did not accept the shares of stock mentioned in the writing in payment of the notes. Disregarding that portion of the testimony of Ostrom and Lindvall wherein they declare that they did not consent to the writing on the backs of the notes and did not at any time consider the proposition of accepting the shares of stock in payment of the notes, and viewing said writing as having been assented to by the payees, the most that can be said of it is that, if anything at all, it constituted, in legal effect, only a mere offer or option tendered by the defendant to Ostrom and Lindvall to accept the number of shares of stock in said mining corporation mentioned in the writing in payment of the notes in lieu of their payment in gold coin, as called for by the notes. This writing could no more affect or change the nature or effect of the face of the instruments than if it had been committed to different pieces of paper, unconnected with the notes themselves. The election of the payees to enforce payment of the notes according to the tenor of the face thereof would in either case amount to a rejection of the option to take the stock or a refusal by the payees to exercise their right to do so. And, in this case, even viewing the writings on both sides of the instruments as constituting one entire contract, said instruments, upon the refusal of the payees to take the stock, would at once become what, upon their face, they purport to be and are—unconditional promises to pay the sums of money specified therein in gold coin.

According to the undisputed testimony, the payees had never received any shares of stock in the mining corporation, and, therefore, they had nothing to surrender, as a

condition precedent to their right to enforce payment of the notes in gold coin, except the bare right or option to take or acquire the stock. This right they surrendered the moment they instituted an action for a recovery upon the notes. In other words, the commencement of the action amounted to an election to reject the option and to require the payment of the notes according to the terms of the face thereof. And it was undoubtedly upon the theory as thus stated that the court found that the written matter on the backs of the notes was "surplusage"—that is, immaterial—which finding, under the view we take of the legal effect and scope of said written matter, is strictly true, since, upon the election of the payees to reject the offer thereby tendered by the defendant, said writing became, *ipso facto*, nugatory or of no effect.

We can perceive no reason for disturbing the order, and it is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.